IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>                    Plaintiff-Petitioner,<br><br>            v.<br><br>NORTH COAST RAILROAD AUTHORITY, BOARD OF DIRECTORS OF NORTH COAST RAILROAD AUTHORITY, et al.<br><br>                    Defendants-Respondents. | Case No. C-11-04102 JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. No. 9]** |
| FRIENDS OF THE EEL RIVER,<br><br>                    Plaintiff-Petitioner,<br><br>            v.<br><br>NORTH COAST RAILROAD AUTHORITY, BOARD OF DIRECTORS OF NORTH COAST RAILROAD AUTHORITY, et al.<br><br>                    Defendants-Respondents. | Case No. C-11-04103 JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING PLAINTIFF'S REQUEST FOR FEES AND COSTS [Dkt. No. 8]** |

**I.      INTRODUCTION**

On July 20, 2011, Plaintiffs-Petitioners Friends of the Eel River ("Friends") and Californians for Alternative to Toxics ("CATs") (collectively, "Plaintiffs") brought this action in Marin County

Superior Court, alleging two causes of action under the California Environmental Quality Act, Public Resources Code section 21000-21177 ("CEQA"). On August 19, 2011, Defendants-Respondents North Coast Railroad Authority and the Board of Directors of the North Coast Railroad Authority (collectively, "Defendants" or "NCRA") removed the cases to federal court, claiming that the Interstate Commerce Commission Termination Act ("ICCTA") completely preempts Plaintiffs' state law claims, and that the state claims depend on the resolution of substantial federal questions. Plaintiffs now bring separate motions to remand and, at least for Friends, for fees and costs ("Motions"). Defendants oppose the Motions. The Court finds that the motions are suitable for disposition without oral argument pursuant to Local Rule 7–1(b). Accordingly, the hearing on the Motions set for Thursday, May 10, 2012, at 11:00 a.m. is VACATED. For the reasons stated below, the Court GRANTS Plaintiffs' Motions to Remand and DENIES Plaintiff Friends' request for fees and costs.

## II.   REQUESTS FOR JUDICIAL NOTICE

CATs has requested under Fed. R. Evid. 201(b) that the Court take judicial notice of eight documents that are matters of public record. Plaintiff CATs' Request for Judicial Notice in Support of Plaintiff's Motion to Remand, 1-2. Fed. R. Evid. 201(b) states that courts may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Defendants have not objected to CATs' request or challenged the authenticity of any of the attached documents. Accordingly, the Court takes judicial notice of these documents pursuant to Rule 201 of the Federal Rules of Evidence.

NCRA also requests that the Court take judicial notice of three documents, two of which are matters of public record. NCRA's Request for Judicial Notice in Support of Opposition to Motion for Remand ("NCRA's RJN"), 1-2. CATs objects to consideration of Exhibit 3 to NCRA's RJN, an email, on several grounds. CATs' Reply, 11 n.1. The Court, however, need not decide the issue because it does not find the email relevant to the disposition of the Motions. Accordingly, the Court takes judicial notice of only Exhibits 1 and 2 pursuant to Rule 201 of the Federal Rules of Evidence.

## III. BACKGROUND

### A. The Petitions

Friends and CATs both brought a Verified Petition for Writ of Mandate (the "Petitions") claiming that Respondents failed to conduct adequate environmental review before approving the re-opening of the North Coast Pacific Railroad (the "Railroad") to allow freight traffic from Lombard to Willits, California—the Russian River Division of the Railroad. Petition, ¶ 1. Specifically, Plaintiffs claim that Defendants' Environmental Impact Report ("EIR"), certified on June 20, 2011, violates CEQA by failing to evaluate the full scope of the project; rather, the EIR limits its review of the environmental impacts of re-opening the Railroad to those impacts associated only with the re-opening of the Russian River Division. *Id.* at ¶¶ 1, 41. Plaintiffs contend that Defendants intend to re-open the entire Railroad, which would extend past Willits, through the Eel River Canyon, and end in Humboldt Bay. *Id.* at ¶ 1. Rehabilitation work and railroad operations in the Eel River Canyon, in particular, pose significant environmental challenges due to the area's susceptibility to landslides and floods, as well as the river's threatened salmon populations. *Id.* at ¶¶ 15-17, 41.

Additionally, Plaintiffs maintain that Defendants' failures in adequately disclosing or analyzing the project's significant impacts on the environment include their failure to assess the "impacts on hydrology, water quality, water supply, groundwater flow and recharge, biological resources (including threatened, endangered, and sensitive species), geology, traffic and circulation, noise, air quality, aesthetics, and hazardous materials." *Id.* at ¶ 41(d). As a result, Defendants' mitigation measures are not in compliance with CEQA. *Id.* at ¶ 41. Plaintiffs also contend that Defendants violated CEQA by failing to adequately respond to comments on the EIR and by failing to support their findings with substantial evidence in the administrative record. *Id.* at ¶¶ 42, 46.

Plaintiffs seek, *inter alia*, to have the EIR vacated, to force Respondents' compliance with CEQA, and to enjoin the project, pending full compliance with the requirements of CEQA. *Id.* at 14.

### B. Defendants' Notice of Removal

Defendants removed this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §1441(b). Defendants' Notice of Removal of Action Pursuant to 28 U.S.C. §1441(b) ("Removal Notice"), 1. Defendants contend that this Court has jurisdiction

based on a federal question. *Id.* at 2. Specifically, Defendants maintain that, despite the presence of only state law claims in the Petition, "[t]he preemptive force of the ICCTA is so complete that it displaces any potential state law cause of action and leaves room only for federal claims." *Id.* (citing 49 U.S.C. § 10501(b); *City of Auburn v. United States*, 154 F.3d 1025, 1030 (9th Cir. 1998)). Even if Plaintiffs' claims are not completely preempted, Defendants contend, removal is required because their claims "are necessarily federal in character and the resolution of these claims depend upon the resolution of substantial federal questions." *Id.* at 3. Defendants assert that the Petition impermissibly seeks to regulate railroad operations in contravention to federal law, and to challenge prior rulings of the Surface Transportation Board ("STB"). *Id.* at 3-4.

Additionally, Defendants state that "[t]he approval of the real parties in interest for removal is unnecessary, including those named as sham real parties in interest . . . ." *Id.* at 5. Nonetheless, Defendants believe that "no named Real Party in Interest opposes removal." *Id.*

### C. The Remand Motions

#### 1. Friends' Remand Motion

Friends argues in its Motion that this case should be remanded for two reasons: 1) the Court lacks subject matter jurisdiction because Friends' claims do not arise under federal law; and 2) Defendants' Removal Notice was procedurally improper because it does not certify that all defendants consented to removal.

Regarding subject matter jurisdiction, Friends rejects both bases of federal jurisdiction Defendants assert in their Removal Notice. First, Friends argues that federal law does not completely preempt its CEQA claims because the ICCTA does not create an alternative federal cause of action for these claims. Friends of the Eel River's Motion to Remand to State Court and For Attorneys' Fees ("Friends' Motion"), 8-13 (citing, *inter alia*, *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 463; *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008)). Friends maintains that this case is analogous to *Fayard*, where the First Circuit found that the ICCTA did not completely preempt a nuisance cause of action because it did not provide an exclusive federal cause of action for that type of claim. *Id.* at 10-11 (citing *Fayard*, 533 F.3d at 45-49). Here, Friends asserts, its CEQA claims cannot be "recharacterized" into a cause

4

of action under the ICCTA because nothing in the ICCTA provides a claim for a public agency's failure to conduct adequate environmental review required by CEQA. *Id.* at 11-12.

Pointing to the exclusive remedies outlined in the ICCTA which Defendants rely on in their Removal Notice, Friends argues that these exclusive remedies do not provide an exclusive federal cause of action for several reasons. *Id.* at 12 (citing 49 U.S.C. § 10501(b)). First, these remedies do not even apply to NCRA, who is not a rail carrier. *Id.* (citing Petition, ¶ 3). Second, the application of CEQA in this case cannot be seen as a "regulation" to which the exclusive remedies in the statute are restrained because NCRA voluntarily pursued state funding for the project that was expressly conditioned on CEQA review. *Id.* Finally, Friends maintains that the ICCTA remedies have nothing to do with the environmental review or avoidance of environmental impacts, as addressed by CEQA. *Id.* at 13. Friends states that, "at most, the ICCTA creates an exclusive cause of action against rail carriers that cause harm to others by violating the statute or an order of the [STB] . . . ." *Id.* However, "Friends does not seek compensation for an injury from [the rail carrier's] violation of the ICCTA or an order of the [STB]." *Id.*

Because Defendants' complete preemption argument fails, Friends argues, it is left with an ordinary preemption defense that must be decided by the state court. *Id.* (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 397 n.11 (1987)). Friends states that the Marin County Superior Court has already ruled that NCRA cannot rely on ICCTA preemption to defend against CEQA compliance because NCRA has made "repeated and consistent" statements that its project is subject to CEQA. *Id.* at 14 (quoting RJN, Ex. A). Friends argues that that court's estoppel ruling was correct and, notwithstanding estoppel, the ICCTA does not preempt the application of CEQA in this case. *Id.* at 15-16.

Friends also rejects Defendants' second basis for federal jurisdiction—that its CEQA claims depend upon the resolution of "substantial federal questions." Friends argues that the only substantial federal question presented in this case is whether ICCTA preempts Friends' CEQA claims, which is a defense that is insufficient to create subject matter jurisdiction under the substantial question test. *Id.* at 17 (citing, *inter alia*, *Franchise Tax Bd.*, 463 U.S. at 13-14). Additionally, to the extent Defendants argue jurisdiction is proper under 28 U.S.C § 1336 because

5

Plaintiffs' claims seek to challenge an STB order, Friends rejects that argument since its claims have nothing to do with any STB order. *Id.*

Regarding the Removal Notice's alleged procedural improprieties—the failure to join all defendants in removal—Friends asserts that two defendants Friends named as real parties in interest in the state court action, Northwestern Pacific Railroad Co. ("NWP Co.") and SMART, have not consented to removal and therefore remand is warranted. *Id.* at 18 (citing, *inter alia*, *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988)). Friends argues that because NWP Co. and SMART "have legal interests that may be impacted by NCRA's approval of the Project, Friends properly named them as real parties in interest under CEQA," which requires that petitioners name as real parties in interest "'any recipient of an approval that is the subject of an action or proceeding'" under CEQA. *Id.* at 19 (quoting Cal. Pub. Res. Code § 21167.6.5). According to Friends, California courts have interpreted this provision "extremely broadly, such that an entity that directly benefits from an approval should be named as a real part in interest." *Id.* (citing *County of Imperial v. Superior Court*, 152 Cal. App. 4th 13, 34 (2007)).

Here, NWP Co. stands to benefit because it entered into a lease agreement with NCRA to provide train service on the Railroad. *Id.* (citing Petition, ¶ 4). Likewise, SMART is joint powers authority that "has an ownership interest in the Healdsburg and Lombard segments of the Railroad, over which NCRA has an easement for freight services" as well as an easement for passenger service over the Willits segment of the Railroad. *Id.* (citing Petition, ¶ 5).

Finally, Friends moves for fees and costs incurred in bringing its Remand Motion. *Id.* at 20-23. Friends seeks $48,320.00 in such fees and costs. *Id.* at 23.

### 2. CATs' Remand Motion

The arguments in CATs' Motion do not differ substantially from those in Friends' Motion. CATs, however, does appear to argue an additional, independent basis for remand: because CATs' state law claims "rely on independent legal obligations" the claims are not completely preempted for removal purposes. Californians for Alternatives to Toxics Motion for Remand ("CATs' Motion"), 10 (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction*, 581 F.3d 941, 945 (9th 2009)). CATs

further argues that defensive preemption would also not be warranted in this case. CATs' Motion, 11-13 (citing, *inter alia*, *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 221 (4th Cir. 2009)).

Additionally, CATs asserts that the Removal Notice is procedurally deficient as to it, in particular, because Defendants failed to properly provide notice to CATs and the state court in violation of 28 U.S.C. § 1446(d). *Id.* at 19.

### D. The Opposition

Defendants present several reasons for why they believe removal was proper. First, Defendants contend that a federal question is apparent on the face of the Petitions; specifically, the Petitions seek to enjoin NCRA and its operator from "engaging in any activity pursuant to the Russian River Division Freight Project." NCRA's Opposition to CATs' Motion to Remand ("Opposition I"), 4. Defendants contend that this injunctive remedy is an exclusive question of federal law. Opposition I, 4.

Second, even if not present on the face of the complaint, Defendants invoke the artful pleading doctrine and assert that the state law claims can still be deemed to arise under federal law, citing a three-part disjunctive test from *Arco Envtl Remediation, LLC v. Dept. of Health and Envtl Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000). *Id.* at 5. Defendants contend that the language of the ICCTA satisfies the first part of that test, which looks at whether federal law completely preempts state law, is satisfied here. *Id.* at 7. Defendants cite section 10501, which governs STB's jurisdiction and states that "the Board will have '**exclusive jurisdiction**' over 'the construction, acqusition, **operation**, abandonment, or discontinuance of . . . facilities . . . .'" *Id.* (emphasis original) (quoting 49 U.S.C. § 10501(b)(2)). Further, "the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State Law." *Id.* (quoting 49 U.S.C. § 10501(b)). According to Defendants, this language shows that, in addition to conferring complete preemption, the ICCTA preempts "all remedies administered under state law such as injunctions enjoining freight rail operations."

Defendants assert that complete ICCTA preemption is applied "generally" by courts. *Id.* at 8 (citing *PCI Transp. Inc. v. Forth Worth & W. R.R. Co.*, 418 F.3d 535 (5th Cir. 2005); *In re Hawaiian*

7

*& Guamanian Cabotage Antitrust Litigation*, 647 F. Supp. 1250, 1265 (W.D. Wash. 2009)). Defendants distinguish *Fayard*, where complete ICCTA preemption of a nuisance claim was rejected, as a "narrow exception" to this general rule. *Id.* at 9. This nuisance exception, Defendants argue, consists of two parts: "(1) that states retain the power to provide for the health, safety and welfare through exercise of the retained police power; and (2) that enforcement of nondiscriminatory local laws of general application to prevent nuisance are permissible to the extent that such regulations do not "unreasonably interfere with interstate commerce." *Id.* (citing *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097 (9th Cir. 2010); *Benson v. Union Pac.*, 2008 WL 2946331, at *4 (E.D. Cal. 2008)). Defendants conclude that this exception does not apply to Plaintiffs' CEQA claims. *Id.* at 9-10.

Defendants also contend that Plaintiffs' CEQA claims are completely preempted because Plaintiffs have a "federal remedy." *Id.* at 10. Specifically, Plaintiffs' cause of action addresses the "level of required environmental review," which is analogous to a claim contesting adequate environmental review under the National Environmental Policy Act of 1969 ("NEPA") 42 U.S.C. §§ 4321, *et seq.* Defendants argue that Plaintiffs' claims must be brought in front of the STB, which has jurisdiction over such NEPA claims. *Id.* (citing 49 C.F.R. §§ 1105, *et seq.*; 5 U.S.C. § 554(e)). Defendants contend that the STB has already approved the project under NEPA on August 24, 2007. *Id.* (citing *Northwestern pacific Railroad Co. - Change in Operators Exemption – North Coast Railroad Authority* 2008 WL 275698, at *2 (STB Jan. 31, 2008)).

Defendants assert that the second factor in *Arco*—whether the claim is necessarily federal in character—is satisfied here because Plaintiffs' CEQA claims seek to enjoin railroad operations—"a remedy which is federal in character." *Id.* at 11 (citing *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405 (9th Cir. 1998)). Similarly, the third *Arco* factor, which asks whether the right to relief depends upon resolution of a disputed federal question, is found here since Plaintiffs' requested remedy is preempted by federal law.

Apart from the *Arco* test, Defendants cite to cases where the ICCTA was found to preempt CEQA. *Id.* at 14 (citing *City of Auburn*, 154 F.3d at 1031; *City of Encinitas v. N. San Diego County Transit Dev. Bd.*, 2002 WL 34681621, at *4 (S.D. Cal. Jan. 14, 2002); Slip Opinion, Case #01-cv-

1734-J(AJB), January 14, 2002, *Desertxpress Enters., LLC - Petition for Declaratory Order, STB Finance Docket #34914*, 2007 WL 1833521, at *3, (S.T.B.)). Furthermore, Defendants argue, they did not waive preemption by preparing an EIR, and their decision to prepare that document was entirely voluntary and was not required by Defendants' receipt of funds from CalTrans. *Id.* at 15-20. Defendants contend that this distinguishes this case from those where ICCTA preemption was rejected in light of independent legal obligations apart from the ICCTA. *Id.* (citing *Woodbridge v. Consol. Rail Corp.*, 2001 W.L. 283507 (S.T.B. Mar. 22, 2001)).

Finally, Defendants reject Plaintiffs' insistence that the Removal Notice is procedurally deficient because SMART did not join in removal. *Id.* at 20-25. Defendants appear to contend that SMART is not an "indispensable" or "necessary" party to the Petition because, despite SMART's ownership of part of the railroad, Defendants hold an exclusive easement and are therefore actually in control of railroad operations. *Id.* at 20-22. The complete relief Plaintiffs seek can be accomplished without SMART being a party to the Petition. *Id.* at 24. Furthermore, Defendants assert, SMART's nonparticipation in this action is "evidence that it is not a real party in interest." *Id.* at 22. Finally, CEQA does not require SMART be named as a part since SMART was not the "recipient of any approval," *Id.* at 23 (citing Cal. Pub. Res. Code § 21167.6.5(a)), and because Plaintiffs only contend that SMART "might" be affected by this litigation. *Id.*

Regarding NWP Co., Defendants state that it is a real party in interest, has "approved removal," and "joins in" the Opposition. *Id.* at 22.

### E. The Reply

In response to Defendants' Opposition, Plaintiffs contend that their NEPA challenge is entirely separate from the present CEQA litigation. Friends of the Eel River's Reply in Support of Motion to Remand and for Attorneys' Fees ("Friends' Reply"), 3-4 (citing *Nelson v. County of Kern*, 190 Cal. App. 4th 252, 278-81 (2010)). Furthermore, under the *Arco* test, Defendants fail to establish complete preemption because they do not identify an "alternative" cause of action in the ICCTA. *Id.* at 5. Moreover, Plaintiffs assert, none exist in the ICCTA for Plaintiffs' CEQA claims. *Id.* at 5-6. To the extent Defendants argue NEPA provides an alternative claim, Plaintiffs insist that the claims and relief are not similar, and, moreover, Defendants are claiming that the ICCTA—not

1 NEPA—completely preempts the CEQA claims. *Id.* at 9. Additionally, Defendants fail to establish
2 that Plaintiffs' claims necessarily depend on the resolution of a substantial federal question because
3 the only federal question is ordinary defense preemption, which does not, on its own, create federal
4 subject matter jurisdiction. *Id.* at 9-10.

5 Regarding procedural irregularities, Plaintiffs contend that Defendants fail to refute that
6 SMART is not a "recipient of approval" under the broad reading of the statute, which covers parties
7 with a contractual interest in the project. *Id.* at 13. SMART is a real party in interest in this
8 litigation because its ownership of real property and a passenger easement, as well as an operating
9 agreement between NCRA and SMART, satisfies the standard for a "recipient of approval." *Id.*

10 Friends asserts its fees compiling the Reply total $36,510 for 76 hours of work. *Id.* at 15.
11 Friends now seek a total of $91,177.94 in fees and costs resulting from removal. *Id.*

## III. ANALYSIS

### A. Legal Standard Governing Removal

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Original jurisdiction may be based on diversity or the existence of a federal question, as set forth in 28 U.S.C. §§ 1331 and 1332. Subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), based on diversity, requires complete diversity of citizenship and an amount in controversy in excess of $75,000. Subject matter jurisdiction under 28 U.S.C. § 1331, based on the existence of a federal question, requires a civil action to arise under the constitution, laws, or treaties of the United States. "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

(citation omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*

Removal pursuant to 28 U.S.C. § 1441 is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This rule makes the plaintiff the master of its claim in that the plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *Id.* Further, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.*

There is, however, a corollary to the well-pleaded complaint rule, known as the "artful pleading doctrine." *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). The doctrine provides that "'[a]lthough the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim.'" *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1389 (9th Cir. 1989) (quoting *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 860 (9th Cir. 1987)). "Under the artful pleading doctrine, 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *Lippitt*, 340 F.3d at 1041 (quoting *Franchise Tax Bd.*, 463 U.S. at 22). The doctrine allows courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's state-law claim as a federal claim." *Precision Pay Phones v. Qwest Commc'ns Corp.*, 210 F. Supp. 2d 1106, 1112-13 (N.D. Cal. 2002) (Chen, J.). However, the doctrine is to be invoked "only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1427 (9th Cir. 1984). Courts have used the artful pleading doctrine in: 1) complete preemption cases, and 2) substantial federal question cases. *See Lippitt*, 340 F.3d at 1041.

**B.     Whether Federal Subject Matter Jurisdiction Exists**

The parties here are not of diverse citizenship, and the faces of Plaintiffs' Petitions raise only state law claims.[1] Thus, the only plausible basis for removal is jurisdiction based on complete preemption or the presence of a substantial federal question. The Court addresses both possible bases in turn.

**1.     Complete Preemption**

**a.     Background Law**

The complete preemption doctrine applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); *see Franchise Tax Bd.*, 463 U.S. at 22 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."); *see also Fayard*, 533 F.3d at 45 ("Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim.") (emphasis original).

The Supreme Court has applied the doctrine in only three contexts: labor contracts under the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968); claims for benefits from plans regulated by ERISA, *Metro. Life*, 481 U.S. at 67; and usury claims against federally chartered banks, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003). In *Beneficial*, the Supreme Court clarified when removal was proper under complete preemption:

> In the two categories of cases where this Court has found complete preemption-certain causes of action under LMRA and ERISA-*the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.*

---

[1] Defendants' argument that Plaintiffs' Petitions present a federal claim on the faces of the Petitions is clearly incorrect; Plaintiffs' Petitions rely exclusively on state law.

[2] The Court rejects Friends' conclusory assertion that the ICCTA does not apply to NCRA because NCRA is not a rail carrier within the meaning of the statute. Friends provides no explanation for this contention. Moreover, *Fayard* rejected a similar challenge upon concluding that

*Id.* at 8 (emphasis added); *see also Lippitt*, 340 F.3d at 1042 (quoting same).

### b. Application of Law to Facts

Whether complete preemption applies in this case depends on whether the ICCTA provides "the exclusive cause of action" for Plaintiffs' CEQA claims.[2] *Id.* The Court finds that the ICCTA does not provide any cause of action for Plaintiffs' claims. Regarding the scope of the STB's jurisdiction, the ICCTA provides:

> The jurisdiction of the Board over transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules . . . practices, routes, services, and facilities of such carriers . . . is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State laws.

49 U.S.C. § 10501(b). While recognized as broad, this language does not necessarily completely preempt every state law claim. *See Fayard*, 533 F.3d at 47 ("No one supposes that a railroad sued under state law for unpaid bills by a supplier of diesel fuel or ticket forms can remove the case based on complete preemption simply because the railroad is subject to the ICCTA."). Rather, Defendants must point to some provision in the ICCTA that supplies a federal cause of action amounting to Plaintiffs' CEQA claims. *See PCI Transp. Inc. v. Forth Worth & W. R.R. Co.*, 418 F.3d 535 (5th Cir. 2005) (finding that section 10501(b) completely preempts plaintiff's non-contractual claims challenging particular rates for holding cargo). Defendants, however, fail to meet this basic requirement necessary to establish removal based on complete preemption.

Defendants assert that NEPA and STB's implementing regulations of that statute provide Plaintiffs with a "federal remedy" to assert the gravamen of its petition that the resumption of freight

---

[2] The Court rejects Friends' conclusory assertion that the ICCTA does not apply to NCRA because NCRA is not a rail carrier within the meaning of the statute. Friends provides no explanation for this contention. Moreover, *Fayard* rejected a similar challenge upon concluding that the railroad company in that case contracts indiscriminately with any carrier who wants them, meeting the conventional definition of a common carrier. *Fayard*, 533 F.3d at 46-47 (citing *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 250-51 (3d Cir. 2007)). According to Friends' Petition, NCRA has contracted with NWP Co. to operate trains on the Railroad. Petition at ¶ 4. Friends provides no reason to believe NCRA does not qualify as a rail carrier in light of its relationship with NWP Co.

13

rail operations required environmental review. Opposition at 10. There are several problems with this assertion. As an initial matter, Defendants repeatedly refer to a federal remedy when the operative question deals with a federal *claim*. Second, Plaintiffs' claims do not seek a finding as to whether environmental review was required; rather, Plaintiffs' claims are for specific violations of CEQA related to the alleged deficiencies in Defendants' EIR. Third, Defendants have pointed to no provision, and the Court cannot locate one, in the STB's implementing regulations, or in NEPA for that matter, that would provide Plaintiffs with a cause of action for their CEQA claims. Defendants have failed to show that NEPA or the STB's implementing regulations provide private redress for Plaintiffs' CEQA claims.

Moreover, the Court can identify no provision of the ICCTA that supports complete preemption in this case. Section 10702 provides that railroads must "establish reasonable rates" and reasonable "rules and practices on matters related to . . . transportation or service." 49 U.S.C. § 10702. The STB may determine which railroad practices violate that section. *Id.* § 10704; *Fayard*, 533 F.3d at 47. The statute further provides that a person "may file with the Board a complaint about a violation of this part by a rail carrier providing transportation or service subject to the jurisdiction of the Board under this part." *Id.* § 11701(b). A federal cause of action is conferred upon those injured by practices that directly violate the act. *Id.* § 11704; *Fayard*, 533 F.3d at 47 (citing *Rymes Heating Oils, Inc. v. Springfield Terminal R.R. Co.*, 358 F.3d 82, 89 (1st Cir. 2004)).

The Court finds no clear cause of action in the statute that would support Plaintiffs' CEQA claims. *See Fayard*, 533 F.3d at 47 (reviewing the same sections of the statute and concluding that "despite the apparent breadth of the Board's mandate, it is far from clear that the ICCTA provides private redress for the kind of nuisance claims that the Fayards are advancing"). This Court agrees with the First Circuit that the reference to "practices" in the statute may be limited by context. *Id.* The *Fayard* court, in rejecting complete preemption of plaintiffs' nuisance claim, could find no STB or court precedents entertaining ICCTA claims seeking redress for railroad conduct akin to nuisance. *Id.* Likewise, this Court can find no such precedent in the context of a CEQA claim.[3] The *Fayard*

---

[3] Defendants' rely on the STB's decision in *DesertXpress*; however, that case is inapposite to this action. There, plaintiff sought a declaratory order finding that its project was not subject to CEQA because of the federal preemption in section 10501(b). *DesertXpress Enters., LLC - Petition*

court also cautioned that where there is no "clear-cut" federal cause of action available to plaintiffs, like the Court has found for ERISA benefit claimants or those who seek to enforce labor contracts, "there are good reasons, certainly for a lower federal court, to refuse to extend complete preemption beyond its current boundaries as reflected in the Supreme Court decisions." *Id.* at 48. Because there is no clear-cut federal cause of action for Plaintiffs' claims here, the Court finds that Defendants have not satisfied their burden that removal through the "extreme" and "unusual outcome" of complete preemption was proper. *Id.* at 49.

Finally, Defendants argue that this Court should follow the court in *City of Encinitas v. N. San Diego County Transit Dev. Bd.*, 2002 WL 34681621 (S.D. Cal. Jan. 14, 2002), which appears to give support to the argument that the ICCTA provides a cause of action for a CEQA claim. The plaintiff there, the City of Encinitas, brought several claims in state court against a rail carrier alleging that the carrier had violated several state statutes, including CEQA. *Id.* at *1-2. The defendant removed the case to federal court, and the plaintiff filed a motion to remand. *Id.* In dismissing plaintiff's claims and denying its motion to remand as moot, the court found that the ICCTA vested "exclusive jurisdiction" over plaintiff's claims in the STB. *Id.* at *4-5. Although the court does not mention complete preemption by name, it states that "Congress abrogated district court jurisdiction under § 1331 when it placed exclusive jurisdiction of railroad transportation under the STB," and then proceeds to cite the ICCTA provisions discussed above. *Id.* at *5. The court thus appears to find that plaintiff's state claims could only be asserted as federal claims under the ICCTA.

However, this Court declines to follow *City of Encinitas* to the extent it holds that the ICCTA vests exclusive jurisdiction over a state claim alleging a CEQA violation in the STB. The court's order in regards to subject matter jurisdiction does not distinguish between the plaintiff's state law causes of action, much less identify a substitute cause of action in the ICCTA for each of the claims, as required for complete preemption to apply. As explained above, the ICCTA does not

---

*for Declaratory Order, STB Finance Docket #34914*, 2007 WL 1833521, at *1. While the ICCTA may provide a party with the right to seek a declaratory order, that is irrelevant to whether the ICCTA provides a cause of action for Plaintiffs' claims here, which allege violations of CEQA; they do not seek a declaratory order stating that CEQA applies to the project.

15

automatically transform every state law claim into a claim under the ICCTA, and, specific to this case, it does not provide a cause of action for a CEQA violation. Additionally, this Court declines to follow *City of Encinitas* to the extent it relied on the doctrine of ordinary defense preemption in concluding that Congress vested "exclusive jurisdiction" over state CEQA claims in the STB.[4]

### 2. Substantial Federal Question

#### a. Background Law

In addition to complete preemption, the artful pleading doctrine allows federal courts to retain jurisdiction over state law claims that implicate a substantial federal question. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "A state cause of action invokes federal question jurisdiction only if it 'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally

---

[4] Defendants' reliance on *City of Auburn v. United States*, 154 F.3d 1025, 1030 (9th Cir. 1998) is also unavailing. That case is simply not a complete preemption case; rather, the Ninth Circuit's holdings in that case, however broad, relate only to defense preemption, which is not at issue in deciding whether the Court has subject matter jurisdiction. *See Fayard*, 533 F.3d at 49 (whether ICCTA preemption is a defense to plaintiffs' claims does not control whether complete preemption exists); *Marin Gen.*, 581 F.3d at 945 (noting the confusion between complete preemption, which provides a basis for federal question jurisdiction, and defense preemption, which does not). The Court expresses no opinion as to whether Plaintiffs' claims are precluded by other forms of preemption. That is for the state court to decide upon remand. *See Franchise Tax Bd.*, 463 U.S. at 27-28.

Additionally, the Court declines to follow CATs' suggestion that complete preemption doesn't apply here because Plaintiffs' CEQA claims rely on independent legal obligations; namely, Defendants' receiving of state transportation money conditioned on their compliance with CEQA. While the Court does not deny that an "independent legal duty" forecloses complete preemption in the ERISA context, *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *Marin Gen.*, 581 F.3d at 946-47, it is not apparent to the Court how that test would apply in the ICCTA context. In *Davila*, the Supreme Court formulated a two-part test whereby a state law claim is completely preempted by ERISA § 502(a)(1)(B) if 1) "an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and 2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id.*; *see Marin Gen.*, 581 F.3d at 946-47. Under § 502(a)(1)(B), "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Id.* However, if a legal duty independent of ERISA or the plan is violated, then the individual's suit does not "fall within the scope" of § 502(a)(1)(B), and the claims are not completely preempted. *Id.* In the absence of any authority that this Court is aware of that has applied this exception to statutory schemes outside of ERISA, the Court declines to read the Supreme Court's rule in *Davila* as broadly as Plaintiffs suggest.

approved balance of federal and state judicial responsibilities.'" *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674 (9th Cir. 2012) (quoting *Grable & Sons*, 545 U.S. at 314). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons*, 545 U.S. at 312. "This type of federal question jurisdiction applies to a 'special and small category' of cases." *Nevada*, 672 F.3d at 674 (quoting *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699 (2006)).

### b. Application of Law to Facts

Plaintiffs' CEQA claims do not "necessarily raise a . . . substantial" issue of federal law. *Grable & Sons*, 545 U.S. at 314. Defendants' arguments to the contrary are either rehashings of their complete preemption contentions or arguments related to defense preemption.[5] Regarding the latter, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 392. Defendants' assertions that Plaintiffs' remedy can only be determined by reference to "preempting" remedial provisions in the ICCTA is clearly invoking Defendants' preemption defense, which does not qualify as a substantial federal question upon which removal may be based. *Franchise Tax Bd.*, 463 U.S. at 13-14.

### C. Whether Notice of Removal Was Procedurally Improper

#### 1. Background Law

As a general rule, all defendants in the state court action must join in the petition for removal. *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). Although there are certain exceptions to this rule of unanimity, "[w]here fewer than all the defendants have joined in a

---

[5] Defendants' erroneously cite to *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405 (9th Cir. 1998) for the proposition that Plaintiffs' claims are necessarily federal in character. *Brennan* involved application of the artful pleading doctrine where "the defendant has a federal preemption defense to a state claim and federal law provides a remedy." *Brennan*, 134 F.3d at 1409 (citation omitted). "It thus appears indistinguishable from the 'complete preemption' doctrine." *Precision Pay Phones v. Qwest Comms. Corp.*, 210 F. Supp. 2d 1106, 1113 n.2 (N.D. Cal. 2002) (Chen, J.).

removal action, the removing party has the burden under section 1446(a) to explain affirmatively the absence of any co-defendants in the notice for removal." *Prize Frize v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). "[N]ominal, unknown or fraudulently joined parties" need not join in a petition of removal. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

### 2. Application of Law to Facts

Plaintiffs contend that SMART has not consented to removal and therefore removal was procedurally improper.[6] Although Defendants concede that SMART has an underlying ownership interest in fee of a portion of the Railroad, Defendants contend that SMART has no interest in this litigation and is a nominal party. Defendants, however, have not met their burden to "explain affirmatively" why SMART is a nominal defendant. *Prize Frize*, 167 F.3d at 1266; *see Gaus*, 980 F.2d at 566 (courts should "strictly construe the removal statute against removal jurisdiction"). While SMART does not appear actively engaged in the project, its ownership interests in the Railroad gives it a clear stake in this litigation requiring it to join in the removal. *See Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1133 (9th Cir. 2002) ("Defendants who are nominal parties *with nothing at stake* may be disregarded in determining diversity, despite the propriety of their technical joinder.") (emphasis added). It is undisputed that SMART owns real property and easements for rail service in the project area, and that there is an operating agreement between SMART and NCRA. While SMART may have relinquished approval authority over the project, it does not follow that SMART no longer retains an interest in the value of its property interest, which may be affected by the outcome of this litigation. Additionally, the Court does not agree with Defendants that it is clear that SMART was not a "recipient of an approval" and therefore was not a "real party in interest," as defined by CEQA when this action was filed. *See* Cal. Pub. Res. Code. §

---

[6] Plaintiffs' Motions also allege that NWP Co. did not consent to removal. However, following Plaintiffs' Motions, NWP Co. joined NCRA's Opposition, asserting that it did consent to removal prior to the Notice of Removal being filed. *See* NWP Co.'s Joinder of NCRA's Opposition to Motion to Remand, 2. Plaintiffs appear to no longer contest that NWP Co. failed to join in the removal.

21167.6.5.  Accordingly, the Court GRANTS Plaintiffs' Motions to Remand on the additional basis that the Notice of Removal fails to join all defendants.

### D.   Whether Fees and Costs Should be Awarded

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  The *Martin* Court explained that "district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*  In *Lussier v. Dollar Tree Stores, Inc.*, the Ninth Circuit cautioned that "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." 518 F.3d 1062, 1065 (9th Cir. 2008).  Rather, the objective reasonableness of the removal depends on the clarity of the applicable law and whether such law "clearly foreclosed" the defendant's arguments for removal.  *Id.* at 1066–67.

Friends moves for fees and costs incurred as the result of removal.  The Court DENIES Friends' request in light of the complexity of the complete preemption question.  *See Fayard*, 533 F.3d at 49 (denying fees and costs).

## IV.   CONCLUSION

For the reasons stated, the Court GRANTS Plaintiffs' Motions to Remand, and DENIES Friends' Motion for Attorneys' Fees.  Accordingly, the Court REMANDS both cases to state court.

IT IS SO ORDERED.

Dated: May 8, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge